EDWARD B. RUFF, III (SBN 6181322) *(pro hac vice)*
MICHAEL P. TURIELLO (SBN 6238272) *(pro hac vice)*
CRYSTAL L. LEIGHTON (SBN 6290021) *(pro hac vice)*
Pretzel & Stouffer, Chartered
1 South Wacker Drive, Ste. 2500
Chicago, Illinois 60606
Telephone:  (312) 346-1973, Fax:  (312) 346-8242
Email: eruff@pretzel-stouffer.com
       mturiello@pretzel-stouffer.com
       cleighton@pretzel-stouffer.com
*Attorneys for Defendant, ROANOKE COMPANIES GROUP, INC., n/k/a BRTT, INC.*

JOHN P. MACNAUGHTON (SBN 464550) *(pro hac vice)*
SESLEE S. MATTSON (SBN 663377) *(pro hac vice)*
Morris Manning & Martin, LLP
3343 Peachtree Road, N.E., Ste. 1600
Atlanta, Georgia 30326-1044
Telephone:  (404) 233-7000, Fax:  (404) 365-9532
Email: jpm@mmmlaw.com
       smattson@mmmlaw.com
*Attorneys for Defendant, HOME DEPOT U.S.A., INC.*

RICHARD M. WILLIAMS (SBN 68032)
Gray Duffy, LLP
702 Marshall Street, Suite 600
Redwood City, California  94063
Telephone:  (650) 365-7343, Fax:  (650) 365-6225
Email: rwilliams@grayduffylaw.com
*Attorneys for Defendants, ROANOKE COMPANIES GROUP, INC., n/k/a BRTT, INC. and HOME DEPOT U.S.A., INC.*

DENISE A. DICKERSON (SBN 0064947)) *(pro hac vice)*
Sutter O'Connell & Farchione Co., LPA
1301 East 9th Street, Ste 3600
Cleveland, Ohio 44114
Telephone:  (216) 928-2200, Fax::  (216) 928-3604
Email: ddickerson@sutter-law.com
*Attorneys for Defendant, AEROFIL TECHNOLOGY, INC.*

RALPH W. ROBINSON (SBN 51436)
CATHERINE E. KOSS (SBN 244857)
Wilson Elser Moskowitz Edelman & Dicker, LLP
525 Market St, 17th Fl.
San Francisco, California 94105
Telephone:  (415) 433-0990, Fax:  (415) 434-1370
Email: ralph.robinson@wilsonelser.com
       catherine.koss@wilsonelser.com
*Attorneys for Defendant, AEROFIL TECHNOLOGY, INC.*

3:10-CV-10-2363-PJH; 3:10-CV-10-2364-PJH
DEFENDANTS' JOINT CASE MANAGEMENT STATEMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| HILMIJA DZEBIC, ) | CASE NO. 4:10-CV-02363-PJH |
| ) | CASE NO. 4:10-CV-02364-PJH |
| Plaintiff, ) | |
| ) | DEFENDANTS' JOINT CASE |
| v. ) | MANAGEMENT STATEMENT |
| ) | |
| ROANOKE COMPANIES GROUP, INC., ) | |
| et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ------------------------------------------------ ) | |
| ) | |
| FIKRETA OSMANKIC, ) | |
| ) | |
| Plaintiff ) | |
| v. ) | |
| ) | |
| ROANOKE COMPANIES GROUP, INC., ) | |
| et al. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' JOINT CASE MANAGEMENT STATEMENT**

Pursuant to Civil Local Rule 16-9 and the Court's Order dated February 8, 2011, Defendants, Roanoke Companies Group, Inc., n/k/a BRTT Inc. ("Roanoke"), Home Depot U.S.A., Inc. ("Home Depot"), and Aerofil Technology, Inc. ("Aerofil") file this Defendants' Joint Case Management Statement.

**Preliminary Statement**

These matters were originally filed in the State Court of Fulton County, Georgia on

1

January 22, 2008, and were removed to the Northern District of Georgia on February 20, 2008. *See*, Notice of Removal, 4:10-cv-02363-PJH, Doc. No. 191. Subsequent to Removal, these matters were consolidated into the *In re Stand 'n Seal Multidistrict Litigation,* MDL-1804, pending in the Northern District of Georgia before the Honorable Thomas W. Thrash. A scheduling order specific to the *Dzebic* and *Osmankic* matters was entered by Judge Thrash on September 24, 2009, closing case specific discovery on December 15, 2009, and setting the matter for trial on February 1, 2010. 1:08-cv-00553-TWT, Doc. No. 87, and 1:08-cv-00554-TWT, Doc. No. 86, attached hereto as Ex. A. On January 5, 2010, Judge Thrash granted the parties joint request to reset the trial date to February 16, 2010, and set the Final Pretrial Conference for February 2, 2010. 1:08-cv-00553-TWT, Doc. No. 122, and 1:08-cv-00554-TWT, Doc. No. 113, attached hereto as Ex. B. On January 22, 2010, the parties submitted their Joint Pretrial Order, 1:08-md-1804-TWT, Doc. No. 2596, attached hereto as Ex. C. On January 29, 2010, all parties, including the Plaintiffs, filed their motions in limine per the Court's order. 1:08-cv-00553-TWT, Doc. Nos. 143-169, and 1:08-cv-00554-TWT, Doc. Nos. 132-158. On February 2, 2010, the trial in the *Dzebic* and *Osmankic* matters was continued at Plaintiffs' request. 1:08-cv-00553-TWT, Doc. No. 171, and 1:08-cv-00554-TWT, Doc. No. 158, attached hereto as Ex. D. Apart from the conclusion of the deposition of Plaintiffs' expert, Dr. Eric M. Gershwin, and Defendants' expert neurologist, Dr. Michael Lacey, all discovery has been completed and these matters are ready to be set for trial.

On May 25, 2010, *Dzebic* and *Osmankic* were transferred to the Northern District of California. *See* MDL Court's May 25, 2010 Order, 4:10-cv-02363-PJH, Doc. No. 191, Ex. 11.

On Jul. 27, 1010, this Court granted Aerofil's motion to relate the two cases.  *See* Court's Jul. 27, 2010 Order, 4:10-cv-02363-PJH, Doc. No. 210.

1. **Jurisdiction and Service:**  This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332.  No issues remain regarding personal jurisdiction or venue, and all parties have been served.

2. **Facts:**  This is a product liability case arising out of Plaintiffs' purported use of Stand 'n Seal Spray-On Grout Sealer ("SNS"), a spray-on sealant used to seal tile grout and natural stone or other porous, textured tile commonly affixed to walls, floors and countertops in kitchens and bathrooms.  Since 1999, SLR Inc. ("SLR") had been manufacturing and selling the product under its own label, EasyCare, through a national distributor.  In 2003, Roanoke and SLR entered an agreement where SLR would manufacture SNS for Roanoke to distribute to Home Depot stores under its own label.  SLR provided Aerofil with the liquid chemical premix for SNS.  The premix was a proprietary ingredient, know only to SLR

Pursuant to the contract between Roanoke and SLR, SLR was required to obtain Roanoke's written approval prior to making any material changes to the product specifications, i.e., the SNS formulation, and, thereafter to provide Roanoke with an updated Material Safety Data Sheet ("MSDS") for the product.  Roanoke had no role in the design or manufacture of SNS.  Moreover, Roanoke did not know the formula for SNS.  Per SLR's specifications, Aerofil mixed the components of SNS, filled the cans and charged them with propellant to create a sprayable product.  Between November 2003 and May 2005, Roanoke distributed and Home Depot sold approximately 1.3 million cans of SNS without incident.

On February 24, 2005, SLR changed the raw material in SNS from Zonyl 225 ("Zonyl"), manufactured by DuPont, to Flexipel S-22WS ("Flexipel"), manufactured by Innovative Chemical Technologies, Inc. ("ICT"), without notice to or consent from Roanoke. At that time, SLR told Aerofil that it was only a change in supplier and to continue to use the same MSDS. Other than SLR, no other entity had the right or the ability to contact Aerofil and change the SNS formula. Unbeknownst to Roanoke, SLR had changed the SNS chemical formula and manufactured 300,000 cans of SNS containing the alternate raw material, Flexipel. Roanoke played no role in SLR's unauthorized decision to change the design and formulation of SNS. Moreover, in violation of its contractual obligations, SLR changed the formulation of SNS without Roanoke's consent or knowledge.

Beginning in late May 2005, Roanoke began receiving complaints through ChemTrec, a third-party collector of consumer inquiries and complaints. Roanoke repeatedly asked SLR if the chemical formulation of SNS had been changed. SLR repeatedly denied that any changes had been made to the product. On June 17, 2005, Roanoke reported the Chemtrec complaints to the Consumer Product Safety Commission ("CPSC").

On June 22, 2005, after Roanoke had already reported to the CPSC, SLR advised Roanoke that there had been a change in the supplier of one of the ingredients in SNS but that the alternate raw material now being used in the SNS formulation was identical to the original raw material, other than the fact that the alternative raw material lacked n-butyl acetate which caused the product not to smell as harsh. Upon learning of the change in supplier, Roanoke instructed SLR to stop production and return to the original formulation immediately.

On July 14, 2005, Roanoke filed its formal report with the CPSC and, under the guidance and direction of the CPSC, initiated a voluntary recall of the fourteen (14) affected batch numbers that it had received from SLR. On July 18, 2005, Aerofil informed Roanoke of two (2) additional batch numbers containing the alternative raw material Flexipel. That same day, Roanoke made the decision to pull all cans of SNS off Home Depot shelves due to concerns over the accuracy of the list of affected batch numbers provided by SLR and Aerofil. Beginning on July 19, 2005, Roanoke shipped all cans of SNS to SLR for sorting and destruction of the identified sixteen (16) affected batches. Home Depot was not involved in the removal of affected SNS cans from its stores.

On March 9, 2007, during the discovery process in the SNS multi-district litigation, Roanoke and Home Depot learned that instead of returning to the original formulation as directed, SLR manufactured an additional three (3) batches of SNS, approximately 50,000 cans, containing Flexipel with n-butyl acetate added. SLR's manufacture of these three (3) additional batches of SNS with Flexipel was in direct contravention of Roanoke's June 22, 2005 order to cease production of any Flexipel-containing SNS. These Flexipel plus n-butyl acetate batches were packaged and sold to the consuming public without Roanoke's or Home Depot's knowledge or consent.

Plaintiffs contend that they sustained injuries because SLR substituted Flexipel for Zonyl in SNS. It is undisputed that Flexipel was used in only 19 batches of SNS and that all other batches contained the original raw material, Zonyl. The following 19 batches of SNS contained Flexipel: A10995, A11015, A11025, A11455, A11465, A11835, A20985, A20995, A21015,

5

A21445, A21455, A21465, A21825, A30985, A30995, A31015, A31445, A31355, and A31825. Plaintiffs' former counsel conceded that Zonyl was not the cause of any of Plaintiffs' alleged injuries and previously announced to the MDL Court that they would only be pursuing claims of injuries involving SNS containing Flexipel.

<u>Facts Specific to Home Depot</u> – Home Depot did not design, test, manufacture, label, formulate or assemble SNS. Home Depot purchased SNS from Roanoke, and without modifying the product in any way, offered SNS for sale to the consuming public in its retail stores. Home Depot and Roanoke entered into a Supplier Buying Agreement on April 20, 2004.

On August 22, 2005, Roanoke informed Home Depot that all of then known affected batches of SNS had been removed from Home Depot stores as of August 5, 2005. On August 30, 2005, Home Depot sent a "Workload Management Communication"[1] to each of its approximately 2000 retail stores nationwide informing them of the SNS recall and instructing them to check all inventories of SNS in an effort to ensure that the sixteen (16) then identified recalled batches of SNS had been removed from the sales floor. On August 30, 2005, Home Depot also sent a nationwide email to all of its U.S. stores regarding the SNS recall, which incorporated the information sent in the Workload Management Communication concerning the SNS recall.

On August 31, 2005, a formal press release was issued by the CPSC with respect to Roanoke's voluntary, retail-level recall of the sixteen (16) production batches then known to contain the substituted chemical, which was later identified as Flexipel. On September 1, 2005,

---

[1] "Workload Management" is a computer software program Home Depot uses to communicate with its retail store locations and attach projects that stores need to complete.

Home Depot posted the CPSC press release, as well as additional information about SNS and the recall, on its website at www.HomeDepot.com.

      3.      **Legal Issues:**

a.      Whether SNS containing Flexipel is defective.

b.      Whether Plaintiffs were exposed to a can of SNS containing Flexipel or Zonyl.

c.      Whether SNS containing Flexipel caused the injuries alleged by Plaintiffs.

d.      Was Aerofil negligent in packaging the SNS.

e.      Was that negligence a direct and proximate cause of Plaintiffs' injuries, if any.

f.      Whether Roanoke designed or was involved in the design of SNS.

g.      Whether Roanoke was negligent in failing to warn of the hazards associated with SNS with Flexipel.

h.      Whether SNS containing Flexipel was defective at the time Home Depot sold it to Plaintiffs.

i.      Whether Home Depot made any affirmation of fact or promise regarding SNS to Plaintiffs.

j.      Assuming Plaintiffs can show Home Depot made an affirmation of fact or promise regarding SNS to Plaintiffs, whether such affirmation of fact or promise became a basis of the bargain between Home Depot and Plaintiffs regarding SNS.

k.      Assuming Plaintiffs can show Home Depot made an express warranty to Plaintiffs regarding SNS, whether Home Depot breached such warranty.

l.      Assuming Plaintiffs can show Home Depot made and breached an express warranty it provided to Plaintiffs, whether such breach caused the injuries alleged by Plaintiffs.

m.      Whether SNS containing Flexipel was of merchantable quality.

n.      Assuming Plaintiffs can show Home Depot sold Plaintiffs SNS that was not of merchantable quality, what damages Plaintiff suffered as a result of such sale.

o. Whether Home Depot had a duty to warn Plaintiffs regarding SNS.

p. If Home Depot possessed a duty to warn Plaintiffs regarding SNS, whether Home Depot breached this duty.

q. Assuming Plaintiffs can show Home Depot possessed and breached a duty to warn Plaintiffs regarding SNS, whether such breach caused the injuries alleged by Plaintiffs.

r. Whether Roanoke was negligent in its execution of the recall.

s. The nature, extent and duration of Plaintiffs' alleged injuries.

t. Assuming Plaintiffs can establish causation and damages, what is SLR's proportionate share or responsibility?

u. Assuming Plaintiffs can establish causation and damages, what is ICT's proportionate share or responsibility?

v. Assuming Plaintiffs can establish causation and damages, what is Aerofil's proportionate share or responsibility?

w. Assuming Plaintiffs can establish causation and damages, what is Roanoke's proportionate share or responsibility?

x. Assuming Plaintiffs can establish causation and damages, what is Home Depot's proportionate share or responsibility?

y. Assuming Plaintiffs can establish causation and damages, what is his/her proportionate share or responsibility?

z. Whether Plaintiffs were negligent in failing to follow medical advice.

aa. The total amount of Plaintiffs' damages, if any.

**4.     Motions:**

Defendant Roanoke filed motions for summary judgment on the issues of Negligence, Malicious, Willful Wanton & Gross Negligence and Punitive Damages, 1:08-mdl-1804-TWT, Doc. No. 1837, and Strict Products, Negligent Design, Negligent Failure to Warn, Warranty and

8

the Consumer Product Safety Act, 1:08-mdl-1804-TWT, Doc. No. 1838, in all cases originally filed in the Northern District of Georgia, including *Dzebic* and *Osmankic*. On July 15, 2009, Judge Thrash granted Roanoke's Motions in part and denied in part in the *Flynn* and *Adams* matters, granting summary judgment on plaintiffs claim for strict product liability, breach of warranty, punitive damages and under the Consumer Product Safety Act. 1:08-mdl-1804-TWT, Doc. No. 2307, attached hereto as Ex. E.

Subsequently, the Court granted Defendants' motion to apply Georgia law to the claims filed by Dzebic and Osmankic, and pursuant to the agreement of the parties, and as reflected in the Proposed Final Pretrial Order filed jointly by the Parties, Judge Thrash's rulings regarding summary judgment under Georgia law were extended to and adopted in the *Dzebic* and *Osmankic* matters. 1:08-mdl-1804-TWT, Doc. No. 2596, Ex. C, attached hereto as Ex. F.

Defendant Home Depot filed motions for summary judgment on the issues of negligence, breach of implied warranty of fitness for particular purpose, gross negligence and punitive damages in the *Dzebic* and *Osmankic* actions. Judge Thrash granted Home Depot's motions for summary judgment on Plaintiffs' claims for breach of implied warranty of fitness for particular purpose, gross negligence and punitive damages. 1:08-mdl-1804-TWT, Doc. No. 2599, attached hereto as Ex. G.

On September 28, 2009, Judge Thrash granted Aerofil's Motion for Summary Judgment on Plaintiffs' claims of strict product liability, negligent recall, breach of warranty and Consumer Product Safety Act. 1:08-mdl-1804-TWT, Doc. No. 2459, attached hereto as Ex. H.

In the related *Flynn* and *Adams* actions (which, like *Dzebic* and *Osmankic*, were actions

originally filed in the Northern District of Georgia and governed by Georgia law), Judge Thrash ruled that Home Depot was a nonmanufacturing product seller of SNS, and thus granted Home Depot's motions for summary judgment on plaintiffs' strict liability claims pursuant to Georgia law.  1:08-mdl-1804-TWT, Doc. No. 2300, attached hereto as Ex. I.  In response to Judge Thrash's ruling, Plaintiffs agreed to withdraw their strict liability, negligent design and negligent manufacture claims against Home Depot, as reflected in the Proposed Final Pretrial Order filed jointly by the Parties.  *See* Ex. F.

Defendants anticipate filing a motion for summary judgment as to the claims of Plaintiff Osmankic.  Case specific discovery has failed to identify any evidence to support a claim that Ms. Osmankic used, was exposed to or injured by a defective can of Stand 'n Seal.

5.      **Amendment of Pleadings**:  Defendants do not anticipate the need for any amendment of pleadings at this point in time.

6.      **Evidence Preservation**:  Core discovery is closed and no additional document productions are anticipated.  These documents were previously produced in the MDL, *In re SNS Products Liability Litigation*, MDL Docket No. 07-1804.

7.      **Disclosures**:  Defendants request that the parties supplement their Rule 26(a)(1) Disclosures on or before April 11, 2011.  Defendants also request that Plaintiffs supplement their respective Plaintiff Profile Form on or before April 11, 2011.

8.      **Discovery**:   As discussed above, all discovery has been completed with the exception of (1) the completion of the deposition of Plaintiffs' previously disclosed expert neurologist, Dr. Eric Gershwin; and (2) the deposition of Defendants' previously disclosed

expert neurologist, Dr. Michael M. Lacey.

9. **Class Actions:** None applicable.

10. **Related Cases:** Roanoke and Home Depot have settled all Stand 'n Seal cases with all plaintiffs other than those in the present action. Aerofil has settled with all plaintiffs other than these plaintiffs and one pending in the Eastern District of Michigan, the *Bergman* matter (E.D. Mich., 2:07-cv-1590-DPH-VMM).

11. **Relief:** Plaintiffs originally alleged claims of negligent design, manufacturing and testing; negligent design and formulation; express warranty, implied warranty of merchantability; and failure to warn. However, as indicated above in Section 4, many of these claims were summarily disposed of on summary judgment by the MDL Court.

Further, Roanoke seeks indemnification from SLR pursuant to the CNA's policy to SLR Easy Care, Policy No. 2077068617 (SLR.INS.TX 2 – SLR.INS.TX 90), which was effective 12/30/04 through 12/30/05. Roanoke filed its indemnification claims in the MDL, and they are stayed. Notably, Plaintiffs have settled with SLR and ICT.

If Plaintiffs establish liability, Defendants request that SLR and ICT be included on the verdict form for purposes of fault apportionment.

12. **Settlement and ADR:** Prospects for settlement are low. Defendants made an offer of judgment of $1,000 for *Dzebic*, which Plaintiff rejected and demanded $1.5 million. With respect to *Osmankic*, Defendants made an offer of judgment of $1,000, which Plaintiff rejected and demanded $500,000.

13. **Consent to Magistrate Judge For All Purposes:** The parties do not consent to a

magistrate judge to conduct all further proceedings, including trial and entry of judgment.

      14.    **Other References:**  Not applicable.

      15.    **Narrowing of Issues:**  None applicable.

      16.    **Expedited Schedule:**  *Dzebic* and *Osmankic* can be handled on an expedited basis as all discovery has been completed with the exception of (1) the completion of the deposition of Plaintiffs' previously disclosed expert neurologist, Dr. Eric Gershwin; and (2) the deposition of Defendants' previously disclosed expert neurologist, Dr. Michael M. Lacey.

      17.    **Scheduling:**  Defendants propose the following dates:

a.    Supplementation of Rule 26(a)(1) Disclosures and Updating Plaintiff Profile Form: April 11, 2011.

b.    Designation of Experts:  Pursuant to the MDL Court's Oct. 16, 2009 Order, Plaintiffs and Defendants have already disclosed their case-specific experts.  1:08-mdl-1804-TWT, Doc. No. 2478, attached hereto as Ex. J.  Thus, the designation of case-specific experts has been completed.

c.    Discovery Cutoff:  Pursuant to the MDL Court's Oct. 16, 2009 Order, discovery closed on Dec. 18, 2009.  *See* Ex. J.  As referenced above, only two depositions of the parties' respective case specific experts remain to be completed.  Defendants propose that Dr. Gershwin's deposition be completed by May 1, 2011, and that Dr. Lacey's deposition be completed by June 1, 2011.

d.    Filing of Dispositive Motions:  July 11, 2011.

e.    Joint Pretrial Order Submission:  August 11, 2011.

f.        <u>Pretrial conference</u>:  August 24, 2011.

g.        <u>Trial</u>:  October, 2011

**18.**    **<u>Trial</u>:**  Parties have requested a jury trial and anticipate the length of the trial to be 7-10 days.

**19.**    **<u>Disclosure of Non-Party Interested Entities or Persons</u>:**

Aerofil Technology, Inc. is a privately held corporation.  No publicly traded entity owns stock in Aerofil Technology, Inc.

BRTT, Inc., f/k/a Roanoke Companies Group, Inc., is a Missouri corporation.  No publicly held entity owns 10% or more of BRTT, Inc.'s stock and there are no parent corporations.

Home Depot U.S.A., Inc., is a direct, wholly-owned subsidiary of Home Depot International, Inc.  Home Depot International, Inc. is a direct, wholly-owned subsidiary of The Home Depot, Inc.  Home Depot International, Inc. owns 100% of the capital stock of Home Depot U.S.A., Inc.  Based solely on a review of filings made with the Securities and Exchange Commission, no publicly held corporation owns 10% or more of the capital stock of The Home Depot, Inc.

This 3rd day of March, 2011.

                Respectfully submitted,

                By: /s/ Edward B. Ruff, III
                    Edward B. Ruff, III (IL #6181322)
                    Pretzel & Stouffer, Chartered
                    One South Wacker Drive
                    Chicago, Illinois 60606
                    Telephone: (312) 578-7450
                    Facsimile: (312) 346-8242
                    Email: eruff@pretzel-stouffer.com
                    *Attorney for Defendant, ROANOKE COMPANIES GROUP, INC., n/k/a BRTT. INC.*

                By: /s/ John P. MacNaughton
                    John P. MacNaughton
                    Morris Manning & Martin, LLP
                    3343 Peachtree Road, N.E., Ste 1600
                    Atlanta, GA 30326-1044
                    Telephone: (404) 233-7000
                    Email: jpm@mmmlaw.com
                    *Attorney for Defendant, HOME DEPOT U.S.A., INC.*

                By: /s/ Denise A. Dickerson
                    Denise A. Dickerson
                    Sutter O'Connell & Farchione Co., LPA
                    1301 East 9th Street, Ste 3600
                    Cleveland, OH 44114
                    Telephone: (216) 928-2200
                    Email: ddickerson@sutter-law.com
                    *Attorney for Defendant, AEROFIL TECHNOLOGY, INC.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of March, 2011, a true copy of the foregoing DEFENDANTS' JOINT CASE MANAGEMENT STATEMENT was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system. Plaintiffs will be served personally at 1832 Reisling Drive, Lodi, CA 95240.

By:/s/ Seslee S. Mattson<br>
Seslee S. Mattson (GA #663377)