UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FIKRETA OSMANKIC,

    Plaintiff,

    v.

ROANOKE COMPANIES GROUP, INC., et al.,

    Defendants.
_____/

No. C 10-2364 PJH

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants' motion for summary judgment came on for hearing before this court on July 20, 2011. Plaintiff appeared in propria persona; defendants Roanoke Companies Group, Inc. ("Roanoke") and Home Depot U.S.A., Inc. ("Home Depot") appeared by their counsel Richard Martin Williams; and defendant Aerofil Technology, Inc. ("Aerofil") appeared by its counsel Denise A. Dickerson and Andrew Smith. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion.

**BACKGROUND**

This product liability case was brought by plaintiff Fikreta Osmankic ("Osmankic"), the wife of Hilmija Dzebic, who is the plaintiff related case C-10-2363. Named as defendants are, among others, the three moving defendants.

In both cases, the plaintiffs allege that they suffered injuries as a result of using (or being exposed to) a product known as "Stand 'n Seal Spray-On Grout Sealer" ("SNS") an aerosol grout sealant containing an allegedly harmful chemical component, Flexipel S-22WS ("Flexipel"). Aerofil is alleged to be the packager of the product in spray cans, Roanoke is alleged to be the distributor of the product, and Home Depo is alleged to be a

retail seller of the product.

Since 1999, the product had been manufactured by SLR, Inc. ("SLR"), which had also been selling it under its own label. In 2003, Roanoke and SLR entered into an agreement pursuant to which SLR would manufacture the product and Roanoke would distribute it to Home Depot under the SNS label. SLR provided Aerofil with the liquid chemical premix for SNS. The premix was a proprietary ingredient, known only to SLR.

Pursuant to the Roanoke/SLR agreement, SLR was required to obtain Roanoke's approval if it made any changes to the product specifications. In February 2005, SLR changed the raw material from Zonyl 225 ("Zonyl") to Flexipel, without notice to or consent of Roanoke. Within about three months, in May 2005, Roanoke began receiving complaints through ChemTrec, a third-party collector of consumer inquiries and complaints. Roanoke asked SLR if the formula had changed, and SLR initially denied that any changes had been made.

In June 2005, Roanoke reported the ChemTrec reports to the Consumer Product Safety Commission ("CPSC"). About five days after Roanoke had made the report to the CPSC, SLR advised Roanoke that there had been a change in one of the ingredients in the formula, but claimed that the alternative raw material was identical to the original raw material, except that it was missing one ingredient. Upon learning of the change, Roanoke instructed SLR to stop production and return to the original formula immediately.

Roanoke also filed another report with the CPSC, and, under the guidance of the CPSC, initiated a recall of the batches of the product that had been manufactured with the altered formula (a total of 16 batches). Roanoke also determined to pull all cans of SNS off the shelves at Home Depot, because it was concerned about the accuracy of the batch numbers reported by SLR. Home Depot was not involved in the removal of SNS cans from its stores.

In March 2007, Roanoke learned that SLR had manufactured three additional batches of the SNS with the altered formula, instead of immediately returning to the original formula as it had been instructed by Roanoke. These three batches were sold to the public

without Roanoke's or Home Depot's knowledge.

The present case and the related case were originally filed in state court in Georgia in January 2008 (although both plaintiffs were living in Hayward, California), and were removed to the Northern District of Georgia in February 2008 and consolidated as part of a Multidistrict Litigation (MDL) case. In February 2009, the court ruled that Georgia law applied to the plaintiffs' claims.

During the course of the litigation, plaintiffs' former counsel conceded that the Zonyl was not the cause of any of the plaintiffs' alleged injuries, and that plaintiffs would be pursuing claims of injuries involving only exposure to the SNS containing Flexipel.

In July 2009, the court granted Roanoke's motion for summary judgment as to plaintiffs' claims for strict product liability and breach of warranty, their claim for punitive damages, and their claim under the Consumer Product Safety Act.

In September 2009, the court granted Aerofil's motion for summary judgment as to the claims for strict product liability, negligent recall, breach of warranty, and violation of the Consumer Product Safety Act.

In January 2010, the court granted Home Depot's motion for summary judgment as to breach of implied warranty of fitness for particular purpose, gross negligence, and punitive damages. Based on the court's ruling with regard to other cases that were part of the MDL, plaintiffs agreed to withdraw their strict liability, negligent design, and negligent manufacture claims against Home Depot.

The Dzebic and Osmankic cases were originally set for trial in February 2010, but the parties requested a continuance, which was granted, and plaintiffs then requested another continuance, which was also granted. For some reason, even though the cases were supposedly ready for trial, there was still expert discovery outstanding.

In April 2010, the plaintiffs filed a motion to transfer the cases to this district. The motion was granted in May 2010, and the cases were transferred here on May 28, 2010. The two cases were subsequently related by the Hon. Vaughan R. Walker. On August 31, 2010, plaintiffs' counsel filed a motion to withdraw as counsel, supported by an affidavit that

was filed under seal. Judge Walker granted the motion on November 8, 2010.

The cases were reassigned to the undersigned on December 14, 2010. At the March 10, 2011, case management conference, plaintiffs requested additional time to obtain counsel. That request was granted, but to date, plaintiffs have not obtained counsel.

The claims remaining in the case are negligent design, negligent manufacture, and negligent recall, as to Roanoke; implied warranty of merchantability, and negligent recall, as to Home Depot; and negligent design, negligent manufacture, and gross negligence, as to Aerofil.

Defendants now seek summary judgment, arguing that there is no evidence that Osmankic was ever exposed to the "SNS" sealant.

**DISCUSSION**

A.   Legal Standard

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v.Thrifty Payless, Inc., 509 F.3d 978, 994 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support

the nonmoving party's case. Celotex, 477 U.S. at 324-25.  If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson, 477 U.S. at 250; see also Fed. R. Civ. P. 56(c), (e).

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir., 2011).

B.    Defendants' Motion

Defendants argue that based on Osmankic's deposition testimony and the undisputed evidence established in the MDL litigation, Osmankic has no direct or circumstantial evidence of exposure to a can of SNS containing Flexipel.

In order to survive summary judgment in a toxic tort case, a plaintiff must provide sufficient evidence to show that the defendant's product was the "proximate cause" of her injuries, regardless of whether she proceeds under a theory of negligence or strict liability. At a minimum, she must provide evidence showing that she was exposed to the allegedly harmful product. Rutherford v. Owens-Illinois, 16 Cal. 4th 953, 976 (1997); see also Chapman v. American Cyanamid Co., 861 F.2d 1515, 1519 (11th Cir. 1988); Lee v. Celotex Corp., 764 F.2d 1489, 1492 (11th Cir. 1985).  Defendants contend that since Osmankic cannot establish exposure to an affected batch of SNS, summary judgment should be granted in their favor.

Defendants note that in October 2008, the court in the MDL case granted the defendants' motion for summary judgment on all claims brought by another plaintiff – Ora Richard – based on her failure to offer evidence supporting exposure to a can of SNS containing Flexipel.  Specifically, Ms. Richard was unable to produce an SNS batch number indicating exposure to a can of SNS containing Flexipel, and was also unable to offer any circumstantial evidence demonstrating such exposure.  Similarly, defendants argue, Osmankic in the present case cannot withstand summary judgment on her claims against defendants.

Osmankic testified in her deposition that she had trouble breathing after using the SNS, and that she went to the doctor. However, she also testified that she threw all the cans of SNS away. Thus, she had no way to check the batch number on any of the cans to determine whether the SNS she used was the SNS containing the Flexipel.

Nor is there any other evidence to show that Osmankic's alleged injuries were caused by exposure to SNS containing Flexipel. Osmankic testified that when she went to the doctor, he told her she had bronchitis, and gave her an inhaler and cough syrup, and possibly some antibiotics. She stayed off from work for some period of time, and felt better, but her symptoms returned when she went back to work. She was extremely hazy on dates throughout her deposition, but testified that she believed it was some time in 2006 when she returned to work.

Osmankic's doctor, Naim Katiby, M.D., testified in his deposition that Osmankic first came to his office in May 2005 because she wanted birth control pills; that he had records that she had had a chest x-ray in May 1996 and another one in January 2002, both of which were "normal" (showing no acute heart or lung disease); and that he himself did not see her in May 2005, but his physician's assistant did. Osmankic was seen at his office in September 2005, complaining of low back pain – history of back injury at work. She was seen again in December 2005, complaining of a sinus infection, with coughing and sneezing.

Dr. Katiby testified further that Osmankic had a chest x-ray in June 2007, which showed some symptoms of "old inflammatory disease." He stated that he did not know the cause of this "old inflammatory disease," but added that "clinically, she is okay and has no breathing problem." He recommended a follow-up x-ray six months later, but as there was no reference in the chart, he assumed she did not pursue it. He also referred her to a pulmonologist in August 2007, but he had no record of such a visit on the chart, and so assumed she did not go.

As of the date of his deposition, in December 2009, Dr. Katiby had no idea of Osmankic's current condition, having not seen her for almost two years, and he also

6

testified that he had no opinion regarding the causation of Ms. Osmankic's symptoms or complaints as they related to the grout sealer.

In sum, Osmankic has provided no evidence showing that she was exposed to SNS containing Flexipel. Nor has she stated clearly what her injuries are, or provided evidence as to causation for those injuries. In the absence of any such evidence, Osmankic cannot prevail on her claims. Accordingly, defendants' motion must be GRANTED.

Osmankic seeks leave to file a "second complaint." The court interprets this request as a request to file an amended complaint. In light of the fact that defendants' motion is being granted, the request for leave to amend is DENIED, as is the request that the case be referred to mediation.

## CONCLUSION

In accordance with the foregoing, defendants' motion for summary judgment is GRANTED. No later than August 8, 2011, defendants shall submit a statement indicating whether a judgment is ripe.[1] In addition, if a judgment is ripe, they shall submit a proposed form of judgment along with the statement.

**IT IS SO ORDERED.**

Dated: July 25, 2011

_____
PHYLLIS J. HAMILTON
United States District Judge

---

[1] The docket for this case reflects that defendants Innovative Chemical Technologies, Inc., and Ortec, Inc., remain in the case, as well as various cross-claims. The court notes that in the case management statement filed on March 3, 2011 (not joined by plaintiffs), defendants stated that Roanoke is seeking indemnification from SLR, Inc. in the MDL (where that portion of the case is presently stayed), and that plaintiffs had settled with SLR and Innovative Chemical Technologies. In addition, counsel for defendants who appeared at the case management conference advised the court that summary judgment had been granted as to the claims against Ortec while the case was pending in the MDL case in the Northern District of Georgia. Defendants should advise this court where in the Georgia court's docket these rulings (and any settlement by the plaintiffs) are reflected.